UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BILLY GENE CROW | ) | 1:08-cv-00518-OWW-JMD-HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| JOHN D. HARTLEY, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | OBJECTIONS DUE WITHIN THIRTY DAYS |

Petitioner Billy Gene Crow ("Petitioner") is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**Procedural History**

Petitioner is currently serving a twenty-seven years to life sentence in connection with his conviction for robbery and first degree murder with an enhancement for use of a deadly weapon in the commission of the offense. (Pet. at 2).

Petitioner appeared before California's Board of Parole Hearings (BPH) on November 30, 2006. The BPH denied Petitioner parole. (Answer, Ex. 1).

Petitioner challenged the BPH's 2006 parole denial in a petition for writ of habeas corpus before the Los Angeles County Superior Court. The Superior Court denied Petitioner relief in a reasoned decision issued on July 23, 2007. (Answer, Ex. 2 at 3).[1]

---

[1] Page citations in this order correspond to the PDF pagination for documents available on the CM/ECF website.

1   Petitioner filed petitions for writ of habeas corpus in the California Court of Appeal and
2   California Supreme Court.  The Court of Appeal and Supreme Court each summarily denied
3   petitioner relief. (Answer, Exs. 5 and 6).
4   Petitioner filed the instant federal petition for writ of habeas corpus on April 16, 2008. (Doc.
5   1).  Respondent filed an answer to the petition on April 15, 2009. (Doc. 14).  Petitioner filed a
6   traverse on May 11, 2009.  (Doc. 15).

### Factual Background

The BPH denied Petitioner parole based, in part, on the nature of Petitioner's commitment offense.  Accordingly, the facts underlying Petitioner's conviction are relevant in this action.  The BPH summarized Petitioner's commitment offense during Petitioner's parole hearing:

> According to the probation officer's report...the defendant was arrested by the Los Angeles police department and was originally charged with attempted murder.  On January 24, 1979, the victim, Richard McIntire...died as a result of a gun shot wound .22 caliber automatic handgun.  The bullet entered his skull behind his left ear.  The victim was 18 years old, father of two-month old child, and a member of the California National Guard....
>
> On January 15, 1979, Crow and a juvenile companion approached the night cashier at the thrifty oil gas company...Present at the cashiers booth [were] Wayne Kimbro, the gas station [attendant] and Richard G. McIntire, a friend of Mr. Kimbro.[2]  Crow pointed a gun at the occupants of the booth and told them to open the door.  The door was opened and Crow and his friend entered the booth.  Kimbro and McIntire were told to get on the floor.  Money was removed from the cash register and several cartons of cigarettes were taken.  Kimbro was ordered to open the floor safe.  Kimbro told Crow that you cannot open the safe.  Crow threatened to shoot Kimbro by the count of 3 if he did not open the safe.  The juvenile companion told Crow not to shoot the victim.  As the defendants backed out of the booth, Crow fired two or three shots at McIntrie who was still kneeling on the floor at the time.  The victim died on January 24, 1979.  The life crime was committed at the end of a series of robberies.

(Answer, Ex. 1 at 50-51). According to Petitioner, he was under the influence of the drug PCP at the time of his commitment offense. (Id. at 51).  Petitioner claimed that he did not remember shooting the victim and that his accomplice handed Petitioner "his murder weapon." (Id. at 61).

During the hearing, a dispute arose as to Petitioner's alleged involvement in several other robberies.  A probation officer's report indicated that Petitioner had been implicated in as many as twelve robberies.  (Id. at 52).  Initially, Petitioner stated that the only robbery he had ever committed

---

[2] Petitioner's parole hearing was poorly transcribed.  For example, instead of the phrase "gas station attendant," the transcript reads "gas station attend enter."  There are also an inordinate amount of "indiscernible" notations in the record.

was the robbery underlying his conviction. (Id. at 53). Later in the hearing, however, Petitioner admitted to committing at least two other robberies. (Id. at 59). Upon further questioning, Petitioner stated he had committed four additional robberies. (Id. at 60). Petitioner gave inconsistent accounts of the role drugs played in each of his robberies. (Id. at 64).

The BPH denied Petitioner parole. The BPH found that Petitioner's crime was "carried out in a [sic] especially cruel and violent manner, its [sic] callous." (Id. at 123). The BPH noted that multiple victims were attacked and that Petitioner murdered his victim in a dispassionate and calculated manner akin to an execution style killing. (Id. at 124). The BPH found that the motive for the crime was "extraordinarily trivial" in relation to the offense. (Id.). The BPH stated that Petitioner may have lacked insight into his crime and the causative factors which led to it at the time of his 2006 hearing. (Id. at 131).

The BPH commended Petitioner on his various achievements while incarcerated but found that Petitioner's most recent psychiatric report was not "totally supportive" of parole. (Id. at 126). The BPH noted that Petitioner's substance abuse problem is linked to his risk of violence and expressed discomfort with Petitioner's "ambivalent appreciation of his lifelong nature [sic] of his substance abuse problem." (Id. at 127). Although the record demonstrated that Petitioner had participated in Narcotics Anonymous for approximately three years and Alcoholics Anonymous for approximately two years, the BPH concluded that due to his attitude and history, Petitioner remained "at a higher risk of substance abuse." (Id.).

The BPH found that Petitioner's parole plans were infirm due to the fact that Petitioner did not present an acceptable employment plan or other source of income. (Id. at 128). The BPH also recommended that Petitioner develop a drug recovery program plan before his next parole hearing. (Id. at 129).

## Discussion

I.  **Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may file a petition for a writ of habeas corpus in the United States district courts if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v.*

*Taylor*, 529 U.S. 362, 375, n.7 (2000). Venue for a habeas corpus petition is proper in the judicial district where the prisoner is held in custody. *See* 28 U.S.C. § 2241(d).

Petitioner asserts that he is currently incarcerated at Avenal State Prison in Avenal, California, in violation of his right to due process under the United States Constitution. As Avenal is within the Eastern District of California, the Court has jurisdiction to entertain Petitioner's petition and venue is proper in the Eastern District. 28 U.S.C. § 84; 28 U.S.C. § 2241(c)(3).

## II. Standard of Review

Section 2254 "is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004)). Under section 2254, a petition for writ of habeas corpus may not be granted unless the state court decision denying Petitioner's state habeas petition "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly...rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citations omitted). In reviewing a state court's summary denial of a state habeas petition, the Court must "look through" the summary disposition to the last reasoned decision issued by the state. *Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991). As the California Court of Appeal and the California Supreme Court both summarily denied Petitioner's state habeas petitions, the Court must review the reasoned decision of the Los Angeles Superior Court denying Petitioner relief. The California Supreme Court is presumed to have rejected Petitioner's state habeas petition for the same reasons set forth in the reasoned decision of the Superior Court. *Id.* at 803.

///

///

## III.    Petitioner's Due Process Claim

### A.  Due Process in the Parole Context

The Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits states from depriving persons of protected liberty interests without due process of law. *See e.g.*, *Sass*, 461 F.3d at 1127. The Court must "analyze Petitioner's due process claim in two steps: 'the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Id.* (quoting *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) *partially overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)). California law vests prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date. *See Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007); *Sass*, 461 F.3d at 1128; *McQuillion v. Duncan*, 306 F.3d 895, 903 (9th Cir. 2002) (citing *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 12 (1979)); *Biggs v. Terhune*, 334 F.3d 910, 915 (2003). Accordingly, the Court must determine whether the State's denial of parole to Petitioner complied with the relevant constitutionally mandated procedural safeguards.

Although California's parole statute creates a liberty interest protected by the Due Process Clause, *Irons*, 306 F.3d at 903, "since the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in [a criminal prosecution proceeding] is not constitutionally mandated" in the parole context, *Pedro v. Oregon Parole Bd.*, 825 F.3d 1396, 1399 (9th Cir. 1987). In *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12-13 (1979), the Supreme Court held that where the language of a state's parole statute creates a statutory expectancy of release, due process requires that a prisoner be 1) afforded an opportunity to be heard; and 2) informed of the reasons for a parole denial. *Id.* at 15. Six years after deciding *Greenholtz*, in *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 455 (1986), the Supreme Court held that a prison disciplinary board's decision to revoke a prisoner's good time credits must be supported by "some evidence." In *Hill*, the Supreme Court noted that "[i]n a variety of contexts, the Court has recognized that a governmental decision resulting in the loss of an important liberty

interest violates due process if the decision is not supported by any evidence." *Id.* Because the fundamental purpose of the "some evidence" standard is to prevent arbitrary deprivations of liberty, *see id.,* and because the liberty interest implicated by parole decisions in California is analogous to the liberty interest implicated in *Hill*– i.e., release from prison– the Ninth Circuit has repeatedly held that the "some evidence" standard applies to California parole determinations, *Irons*, 505 F.3d at 851 (citing *Sass*, 461 F.3d at 1128-29 (quoting *Superintendent v. Hill*, 472 U.S. 445, 457(1985)); *Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904. The Ninth Circuit has also concluded that the "some evidence" standard is clearly established federal law for the purpose of AEDPA review.[3] *Irons*, 505 F.3d at 851 (citing *Sass*, 461 F.3d at 1128-29 (quoting *Superintendent v. Hill*, 472 U.S. 445, 457(1985)); *see also Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904.

**B. The Some Evidence Standard and California Parole Law**

In assessing whether the Board's denial of parole to Petitioner is supported by some evidence, the Court's analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons*, 505 F.3d at 851. Accordingly, the Court must "look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' in [Petitioner's] case constituted an unreasonable application of the 'some evidence' principle articulated in *Hill*." *Id.* "Ascertaining whether [the some evidence] standard is satisfied does not require...weighing of the evidence. ..the relevant question is whether there is any evidence in the record that could support the conclusion reached." *Hill*, 472 U.S. at 455-456

Under California law, the paramount inquiry in determining whether to grant a prisoner parole is whether the prisoner "will pose an unreasonable risk of danger to society if released from prison." CAL. CODE. REGS. TIT 15, § 2402(a) (2009); *Lawrence*, 44 Cal.4th at 1202. Title 15, section 2402 of the California Code of Regulations sets forth the factors to be considered by the BPH in applying California's parole statute to Petitioner. Section 2402 provides in part:

---

[3] The Ninth Circuit is currently considering the "some evidence" standard en banc. *Hayward v. Marshall*, 512 F.3d 536, (9th Cir. 2008) *reh'g en banc granted*, 527 F.3d 797 (2008).

> All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during, and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

CAL. CODE. REGS., tit. 15, § 2402(b). The fact that a prisoner's commitment offense was carried out in an "especially heinous, atrocious or cruel manner" may establish unsuitability for parole. CAL. CODE REGS., tit. 15, § 2402(c).

Section 2402(c) directs the BPH to consider whether a crime was carried out in an especially heinous, atrocious, or cruel matter with reference to the following criteria: (A) multiple victims were attacked; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution style murder; (C) the victim was abused, defiled or mutilated during or after the offense; (D) the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense. *Id.* Where evidence suggests that one or more of the factors discussed in section 2402(c) apply to the circumstances of a prisoner's crime, such evidence "establish[es] unsuitability [for parole] if, and only if, [the circumstances of the crime] are probative to the determination that a prisoner remains a danger to the public." *Lawrence*, 44 Cal.4th at 1212. "When a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision ...that the inmate constitutes a current threat to public safety...not merely whether some evidence confirms the existence of certain factual findings." *Id.* A rational nexus between the unsuitability factors discussed in section 2402(c) and the ultimate determination of dangerousness must exist in order for a prisoner's commitment offense to provide a legitimate basis for a parole denial. *See id.* at 1227.

///

///

**C. The Superior Court's Decision**

The last reasoned decision provided by the State on Petitioner's due process claim is the decision of the Los Angeles Superior Court denying Petitioner's state habeas petition. The Superior Court's conclusion that the BPH's decision to deny Petitioner parole was supported by "some evidence" was based on the nature of Petitioner's commitment offense and Petitioner's need for more self-help programing. (Answer, Ex. 2 at 3). The Court cannot say that the Superior Court's application of the some evidence standard was objectively unreasonable.

The Superior Court identified three factors which rendered Petitioner's crime especially heinous under the criteria set forth in section 2402(c): multiple victim's were attacked, the killing was carried out execution style, and the motive for the offense was extremely trivial. (Answer, Ex. 2 at 3); CAL. CODE REGS., tit. 15, § 2402(c). The record supports the Superior Court's finding that multiple victims were attacked, as Petitioner's crime was perpetrated against two victims during an armed robbery.[4] (Answer, Ex. 1 at 50-51). The Superior Court's finding that Petitioner's crime was carried out in a dispassionate manner akin to an execution style killing is also accurate. CAL. CODE REGS., tit. 15, § 2402(c)(1)(B). Petitioner shot his victim multiple times, including one shot behind the victim's ear, as his victim was kneeling helplessly on the floor. (Answer, Ex. 1 at 50-51). Finally, the Superior Court's finding that the motive for Petitioner's crime was trivial is also correct in light of the record, as Petitioner shot the victim after the robbery had been completed for no apparent reason. (Id.).

The record also supports the Superior Court's finding that the BPH's decision to deny Petitioner parole was based in part on Petitioner's need to complete additional self-help programing in order to gain more insight into his crime and substance abuse problem. During the hearing, the BPH expressed concern regarding Petitioner's inconsistent versions of the crime, his attempt to blame the crime on his drug use, his inconsistent statements regarding participation in other robberies, and his inability to discuss in detail the twelve step program entailed by his substance abuse programing. The BPH was particularly troubled by Petitioner's "ambivalent appreciation of

---

[4] Section 2402(c)(1)(A) states that it applies even where multiple victim's are attacked in "separate incidents." Here, Petitioner admitted to involvement in a string of armed robberies. (Id. at 59).

his lifelong nature [sic] of his substance abuse problem." (Answer, Ex. 1 at 127).

The record supports the Superior Court's findings regarding the Petitioner's commitment offense and his need for additional programming. However, the nature of Petitioner's commitment offense and Petitioner's need for additional programing are not sufficient in and of themselves to support a parole denial, as the paramount inquiry under California law is whether Petitioner posed an unreasonable risk of dangerousness at the time of his 2006 hearing. *Lawrence*, 44 Cal.4th at 1202. A rational nexus between the factors relied on by the BPH and Petitioner's dangerousness must exist in order for the some evidence test to be satisfied. *See id*. at 1227. As the BPH noted, whether Petitioner continues to use drugs when released from prison is a significant factor in determining the level of risk Petitioner poses to society. (Id. at 127). Clearly, there is a rational nexus between Petitioner's need for additional substance abuse programing and his risk of dangerousness, especially given the fact that Petitioner's offense involved drug use. There is also a rational nexus between Petitioner's lack of insight into his crime and Petitioner's current dangerousness. *See, e.g., In re Shaputis*, 44 Cal.4th 1241, 1260 (Cal. 2008).

In light of the especially heinous nature of Petitioner's crime, the BPH's doubts about Petitioner's insight into his crime, and the BPH's finding that Petitioner needed additional substance abuse programing, it was not objectively unreasonable for the Superior Court to hold that some evidence of dangerousness supported the BPH's decision. Accordingly, Petitioner is not entitled to relief under the deferential AEDPA standard of review.

## RECOMMENDATION

Based on the reasons stated above, the Court RECOMMENDS that the petition be DENIED with prejudice and that the clerk of court be DIRECTED to enter judgment for Respondent. This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within

1  ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will
2  then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c). The parties are
3  advised that failure to file objections within the specified time may waive the right to appeal the
4  District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

6      IT IS SO ORDERED.

7  **Dated:   April 21, 2010**                                    /s/ John M. Dixon
                                                         UNITED STATES MAGISTRATE JUDGE